[No. S172684. Feb. 28, 2011.]

DANA BRUNS, Plaintiff and Appellant, v.
E-COMMERCE EXCHANGE, INC., et al., Defendants and Respondents.

COUNSEL

Law Offices of Kevin M. Tripi and Kevin M. Tripi for Plaintiff and Appellant.

Horvitz & Levy, Bradley S. Pauley, Robert H. Wright; Bremer Whyte Brown & O'Meara, Nicole Whyte, Stephanie N. Rachel and Alison Hurley for Defendant and Respondent E-Commerce Exchange, Inc.

Duane Morris, Max H. Stern, W. Andrew Miller and Jessica E. La Londe for Defendants and Respondents CSB Partnership, Chris & Tad Enterprises, CSB & Ellison, LLC, CSB & Hinckley, LLC, CSB & Humbach, LLC, CSB & McCray, LLC, and CSB & Perez, LLC.

Quinn Emanuel Urquhart Oliver & Hedges, Jon Steiger, G. Lisa Wick, David E. Azar, Andrea L. Manka and Jon Cederberg for Defendant and Respondent Flagstar Bank, FSB.

Casello & Lincoln and James H. Casello for Defendants and Respondents Clayton Shurley, Elliot McCrosky, Daniel Quon and Fax.com, Inc.

OPINION

**CHIN, J.**—Code of Civil Procedure section 583.310,[1] which governs the action plaintiff Dana Bruns brought against defendants E-Commerce Exchange, Inc., et al., requires an action "be brought to trial within five years after the action is commenced against the defendant." Otherwise, dismissal of the action is "mandatory and . . . not subject to extension, excuse, or exception except as expressly provided by statute." (§ 583.360, subd. (b).) In this case, we must construe two statutory exclusions to the five-year period, specifically those stated in section 583.340, subdivisions (b) and (c).[2]

First, in computing the time within which an action must be brought to trial, courts must exclude the time during which "[p]rosecution or trial of the action was stayed or enjoined." (§ 583.340(b).) During the nearly seven years that plaintiff's case was pending before it was dismissed, the trial court ordered stays of all the proceedings in plaintiff's action, as well as partial stays, such as stays of discovery and other specific proceedings. We first address whether a stay of the "prosecution" of the action under section 583.340(b) includes a stay of specific proceedings, such as a stay of

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise noted.

[2] We will refer to section 583.340, subdivisions (b) and (c), as section 583.340(b) and section 583.340(c).

discovery, while other aspects of the action may go forward. We conclude, contrary to the Court of Appeal, that the prosecution of an action is stayed under subdivision (b) only when the stay encompasses *all* proceedings in the action.

Second, in computing the time within which an action must be brought to trial, courts must exclude the time during which "[b]ringing the action to trial, for any other reason, was impossible, impracticable, or futile." (§ 583.340(c).) We will discuss the standard trial courts should employ under section 583.340(c) and the standard of appellate review of a trial court's ruling under that provision. Finally, we will remand the matter to the Court of Appeal to review the trial court's ruling in a manner consistent with our opinion.

## I. PROCEDURAL HISTORY

On February 22, 2000, plaintiff Dana Bruns filed a suit against a number of defendants for allegedly transmitting advertisements by telephone facsimile machine that violated the Telephone Consumer Protection Act of 1991. (47 U.S.C. § 227(b)(1)(C).)

On November 22, 2006, one defendant moved to dismiss plaintiff's fifth amended complaint because the five-year period for plaintiff to bring her action to trial had elapsed. The other defendants joined the motion. In response, plaintiff argued that certain periods of time had to be excluded from the five-year period under subdivision (b) or (c), or both, of section 583.340.[3] On January 25, 2007, after hearing the motion to dismiss, the court stayed all proceedings and requested briefing regarding the specific litigation that had taken place during the periods plaintiff claimed should be excluded from the five-year period. Ultimately, the trial court granted the motion to dismiss.

Plaintiff appealed. The Court of Appeal reversed the dismissal and remanded the matter to the trial court. It held that periods of time in which there was a partial stay of proceedings had to be excluded from the five-year period under section 583.340(b), which reduced the total elapsed time to less than five years. The dissenting justice concluded that the Legislature intended the stay language in section 583.340 to involve only a "complete, as distinguished from a partial, stay." We granted review.

---

[3] Because we will remand the matter to the Court of Appeal to apply the law as stated in this opinion, we see no need to recite the details concerning the disputed time periods, which are complex. For example, one defendant presented over 1,000 pages of documents and almost 300 exhibits in support of dismissing the action.

## II.  DISCUSSION

"An action shall be brought to trial within five years after the action is commenced against the defendant." (§ 583.310.) Section 583.340, the statute at issue here, provides as relevant: "In computing the time within which an action must be brought to trial pursuant to this article, there shall be excluded the time during which any of the following conditions existed: [¶] . . . [¶] (b) Prosecution or trial of the action was stayed or enjoined. [¶] (c) Bringing the action to trial, for any other reason, was impossible, impracticable, or futile." We must construe both subdivision (b) and subdivision (c) of this section.

■ The parties do not dispute that this lawsuit is an "action" within the meaning of these provisions. "As used in this chapter, unless the provision or context otherwise requires: [¶] (a) 'Action' includes an action commenced by cross-complaint or other pleading that asserts a cause of action or claim for relief." (§ 583.110, subd. (a).) This action was commenced on February 22, 2000, when plaintiff filed the original complaint. (See *Bank of America v. Superior Court* (1988) 200 Cal.App.3d 1000, 1010–1011 [246 Cal.Rptr. 521] [an action is commenced within the meaning of section 583.310 upon the filing of the plaintiff's original complaint].) It is also undisputed that this action was not brought to trial within five years of this date. " 'A "trial" within the meaning of section 583 is the determination of an issue of law or fact which brings the action to the stage where final disposition can be made.' [Citation.]" (*Briley v. Sukoff* (1979) 98 Cal.App.3d 405, 410 [159 Cal.Rptr. 452].) A case is brought to trial if it has been assigned to a department for trial, it is called for trial, the attorneys have answered that they are ready for trial, and proceedings begin, even if the proceeding is a motion for judgment on the pleadings. (*Katleman v. Katleman* (1959) 175 Cal.App.2d 493, 496–497 [346 P.2d 218].) In an action tried to a jury, the action is brought to trial when the jury is impaneled and sworn. (*Hartman v. Santamarina* (1982) 30 Cal.3d 762, 765–767 [180 Cal.Rptr. 337, 639 P.2d 979].) None of this had happened by the time defendants filed their motion to dismiss under section 583.340, more than five years after plaintiff filed the complaint.

But plaintiff argues that certain periods should have been excluded from the statutory time, reducing the elapsed time from commencement of the action to less than five years. The Court of Appeal agreed with plaintiff. It held, and plaintiff argues, that "a partial stay of an action constitutes a stay of the prosecution of the action within the meaning of section 583.340, subdivision (b)."

We will first discuss the proper interpretation of section 583.340(b). Because we conclude it applies only when a stay encompasses *all* proceedings in the action and does not include partial stays, we will also discuss the extent to which section 583.340(c) may apply.

## A. *Code of Civil Procedure section 583.340(b)*

We must decide whether section 583.340(b) applies to a stay of any part of the proceeding or only to a complete stay of the entire action. Statutory interpretation is a question of law that we review de novo. (*Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 531 [85 Cal.Rptr.2d 257, 976 P.2d 808].) "Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].)

Section 583.340(b)'s language does not definitively answer whether partial stays generally are excluded from the five-year period under section 583.340. It provides that those times must be excluded from the five-year time period in which "[p]rosecution or trial of the action was stayed or enjoined." (§ 583.340(b).) Nothing was enjoined in this case, so the operative word here is "stayed." The term "stay," by itself, could refer to either a partial or a complete cessation of proceedings. A stay "freezes" a court's proceedings at a particular point. (Black's Law Dict. (5th ed. 1979) p. 1267, col. 1.) *"It can be used to stop the prosecution of the action altogether, or to hold up only some phase of it*, such as an execution about to be levied on a judgment." (*Ibid.*, italics added.)

In *Holland v. Dave Altman's R. V. Center* (1990) 222 Cal.App.3d 477 [271 Cal.Rptr. 706], the Court of Appeal addressed the meaning of the term "stay" in section 583.340(b). "[T]he term ['stay'] appears to have a commonly understood meaning as an indefinite postponement of an act or the operation of some consequence, pending the occurrence of a designated event. Thus, in *People v. Santana* (1986) 182 Cal.App.3d 185, 190 [227 Cal.Rptr. 51] . . . , a case involving the stay of a sentence, the court concluded that '[a] stay is a temporary suspension of a procedure in a case until the happening of a defined contingency.' Black's Law Dictionary[, *supra*, at] page 1267 defines the term as 'a suspension of the case or some designated proceedings within it.' " (*Holland, supra*, 222 Cal.App.3d at p. 482.) Relying on *Holland*, plaintiff argues that a "stay" under subdivision (b) is "an indefinite suspension

of the entirety of the case *or* designated acts/proceedings within it that yield the *practical* inability (as opposed to 'complete' or 'absolute' inability) to proceed to trial." But *Holland* does not support this position. *Holland* gave examples of time periods during which the case could not be brought to trial. They included the "absence of trial court jurisdiction to try [the case]" and "a court order barring the trial (by a stay or injunction)." (*Id.* at p. 482.) *Holland* did not address whether the "prosecution" of the action was stayed within the meaning of section 583.340 when only a designated proceeding in a case, other than a trial, was stayed or suspended "until the happening of a defined contingency." (*People v. Santana, supra,* 182 Cal.App.3d at p. 190.)

Because the word "stay" is ambiguous in this context, we turn to *what* must be stayed. Only when the "prosecution" or "the trial" of the "action" is stayed does running of the five-year period halt under 583.340(b). The trial was never stayed in this case; we therefore focus on the meaning of the word "prosecution." The word originally meant the " 'carrying out of any action, scheme, or purpose, with a view to its accomplishment or attainment.' " (Garner, Dict. of Modern Legal Usage (2d ed. 1995) p. 706.) As relevant here, Webster's New World Law Dictionary defines "prosecution" as "[a] pursuing of a lawsuit." (Webster's New World Law Dict. (2006) p. 210.) In a legal context, "prosecution" has been defined, "[a]s applied to actions or suits generally, [as] the following up or carrying on of an action or suit already commenced until the remedy be attained . . . ." (32 Cyclopedia of Law & Procedure (1909) p. 727.) "In its broadest sense the term would embrace *all* proceedings . . . for the protection or enforcement of a right or the punishment of a wrong, whether of a public or private character. " (*Id.* at p. 728, fn. 5, italics added; see *Ray Wong v. Earle C. Anthony, Inc.* (1926) 199 Cal. 15, 18 [247 P. 894] (*Wong*) ["The term 'prosecution' is sufficiently comprehensive to include every step in an action from its commencement to its final determination," citing 32 Cyclopedia of Law & Procedure, *supra,* at p. 727]; *Melancon v. Superior Court* (1954) 42 Cal.2d 698, 707–708 [268 P.2d 1050] (*Melancon*) [same].)

*Wong* involved an action for malicious prosecution stemming from the alleged malicious filing of a criminal complaint against Wong, the ensuing issuance of an arrest warrant in Sacramento County, Wong's arrest in San Joaquin County, and his criminal trial in Sacramento County. In concluding that venue was proper in both Sacramento and San Joaquin counties because "prosecution" of the underlying criminal action had occurred in both counties (*Wong, supra,* 199 Cal. at pp. 19–20), the court explained that "[t]he term 'prosecution' is sufficiently comprehensive to include *every* step in an action from its commencement to its final determination." (*Id.* at p. 18, italics added.) Relying on *Wong,* the *Melancon* court noted that the taking of depositions constitutes "a step in the 'prosecution' " of an action. (*Melancon, supra,* 42 Cal.2d at p. 707.)

The Court of Appeal majority, agreeing with plaintiff's argument, construed *Melancon* "as standing for the proposition that the 'prosecution' of an action is a broad concept encompassing all of the various steps in an action, including, but not limited to, pleading, discovery, and law and motion." It then reasoned that "[e]ach of the various steps in an action constitutes 'prosecution' of that action" under section 583.340(b). However, *Melancon* stands only for the proposition that the entire action, including every step in it such as the taking of depositions, is stayed when a motion to post security is filed. Neither *Wong* nor *Melancon* considered the issue here.

Accordingly, in isolation, section 583.340(b)'s language is ambiguous. A stay of "prosecution" under subdivision (b) reasonably could mean either a stay of any individual or incremental step in an action or a stay of all the proceedings in an action. However, "[w]e do not examine [statutory] language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles, supra*, 34 Cal.4th at p. 737.)

■ We granted review in this case not to consider the language of section 583.340(b) in isolation; rather we are resolving whether only a complete stay of all the proceedings operates to toll the running of the five-year period by which a case must be brought to trial, or whether partial stays of proceedings are sufficient. To answer this inquiry, we must read subdivision (b) together with subdivision (c). When the statute is read as a whole, it becomes apparent that subdivision (b) contemplates a bright-line, nondiscretionary rule that excludes from the time in which a plaintiff must bring a case to trial only that time during which all the proceedings in an action are stayed. Subdivision (c) gives the trial court discretion to exclude additional periods, including periods when partial stays were in place, when the court concludes that bringing the action to trial was "impossible, impracticable, or futile." Obviously, if a complete stay is in effect, bringing the action to trial is impossible. It makes sense for the Legislature to state a bright-line rule in this situation. The effect of a partial stay, however, can vary from stay to stay and from case to case. A partial stay might, or might not, make it "impossible, impracticable, or futile" to bring the action to trial. As discussed below, when the effect of a partial stay is raised by a plaintiff under section 583.340, the trial court must determine whether or not subdivision (c) applies to that partial stay.

This conclusion is bolstered by comparing and harmonizing section 583.340(b)'s language with the language of a different but related statute, as well as by reviewing section 583.340's legislative history.

■ When it enacted section 583.340, the Legislature also enacted provisions governing the time within which service of summons must be made.

(See Sen. Bill No. 1366 (1983–1984 Reg. Sess.) enacted as Stats. 1984, ch. 1705, § 5, p. 6176.) Section 583.210 provides generally that the "summons and complaint shall be served upon a defendant within three years after the action is commenced against the defendant." This mandatory provision is similar to section 583.310's five-year period within which to bring an action to trial. The Legislature enacted exclusions to the computation of this three-year period similar to the exclusions in section 583.340. Specifically, section 583.240 provides: "In computing the time within which service must be made pursuant to this article, there shall be excluded the time during which any of the following conditions existed: [¶] . . . [¶] (b) The prosecution of the action *or proceedings* in the action was stayed and the stay affected service." (§ 583.240(b), italics added.) The italicized language shows the Legislature knows how to specifically reference a partial stay, in addition to a complete stay, when that is its intent. The Legislature's failure to include in section 583.340(b) an express consequence for staying a specific proceeding within an ongoing prosecution is significant, given the presence of such an expression in section 583.240. (See *Martinez v. Regents of University of California* (2010) 50 Cal.4th 1277, 1295–1296 [117 Cal.Rptr.3d 359, 241 P.3d 855] [failure to include a requirement in one statute is significant when the legislative body has included that requirement in other statutes]; *Bernard v. Foley* (2006) 39 Cal.4th 794, 811 [47 Cal.Rptr.3d 248, 139 P.3d 1196] [Legislature's failure to include an express friendship exception in statutory scheme was significant because Legislature has shown it knows how to craft one].) When one provision in a bill refers to the stay of prosecution *or* proceedings in the action, and another provision refers only to a stay of the prosecution, the inference is compelling that the latter reference is only to a complete stay and does not encompass a limited stay.

This inference is especially strong given that section 583.340(b) and section 583.240 were adopted as part of the same Senate bill. (See *County of San Bernardino v. City of San Bernardino* (1997) 15 Cal.4th 909, 943 [64 Cal.Rptr.2d 814, 938 P.2d 876]; *Faulder v. Mendocino County Bd. of Supervisors* (2006) 144 Cal.App.4th 1362, 1369–1370 [51 Cal.Rptr.3d 251] [when Legislature uses materially different language in statutory provisions addressing related subjects, the normal inference is that the Legislature intended a difference in meaning].) To embrace plaintiff's position that section 583.340(b) encompasses individual steps or proceedings in a prosecution, we would have to engraft onto subdivision (b) an exception that the Legislature explicitly included in section 583.240 but did *not* include in section 583.340(b). We decline to rewrite the statute to exclude from the mandatory time in which an action must be brought to trial the time during which individual proceedings are stayed.

The legislative history of section 583.340 and related statutes enacted in 1984 also supports this conclusion. The Legislature enacted section 583.340

in 1984 when it added chapter 1.5 to title 8 of part 2 of the Code of Civil Procedure to regulate dismissals for delay of prosecution. (Stats. 1984, ch. 1705, § 5, pp. 6176, 6179.) The Assembly Committee on Judiciary summarized the purpose of Senate Bill No. 1366 (1983–1984 Reg. Sess.) as follows: "According to the California Law Revision Commission (LRC), the source, this bill 'is a comprehensive revision of the statutes governing dismissal of civil actions for delay in prosecution. The major purpose of the bill is to clarify ambiguities in the law, to bring the statutes into conformity with case law interpreting them, and to reconcile discrepancies in statutes and cases. The bill also makes a number of modest substantive changes to improve the operation of the statutes. The effect of the changes is to encourage . . . disposition of civil actions on the merits rather than dismissal on procedural technicalities.' LRC explains that the existing provisions which this bill would repeal are unduly inflexible and subject to numerous implied exceptions in case law." (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 1366 (1983–1984 Reg. Sess.) as amended July 3, 1984, p. 3.)

The Law Revision Commission explained the need for a comprehensive, unambiguous new set of statutes on dismissal for lack of prosecution. "The policy of the dismissal statutes conflicts with another strong public policy— that which seeks to dispose of litigation on the merits rather than on procedural grounds. As a result of this conflict the courts have developed numerous limitations on and exceptions to the dismissal statutes. The statutes do not accurately state the exceptions, excuses, and existence of court discretion. The interrelation of the statutes is confusing. The state of the law is generally unsatisfactory, requiring frequent appellate decisions for clarification." (Revised Recommendation Relating to Dismissal for Lack of Prosecution (June 1983) 17 Cal. Law Revision Com. Rep. (1983) p. 2, fns. omitted.) The last footnote in the above quoted paragraph noted that "[s]ince the two dismissal statutes were first enacted around the turn of the century there has been continuous appellate litigation—hundreds of cases, the notation of which requires more than 100 pages in the annotated codes—interpreting, clarifying, and rewriting the statutes." (*Id.*, at p. 2, fn. 12.)

Explaining its recommendation for a comprehensive, unambiguous set of statutes dealing with dismissal for lack of prosecution, the Law Revision Commission reasoned that "[f]luctuations in basic procedural policy are undesirable. Every policy shift generates additional litigation to establish the bounds of the law. The policy of the state towards dismissal for lack of prosecution should be fixed and codified, and the dismissal statutes should be construed consistently with this policy." (Revised Recommendation Relating to Dismissal for Lack of Prosecution (June 1983) 17 Cal. Law Revision Com. Rep., *supra*, at p. 3.)

The proposed legislation included section 583.340. The Law Revision Commission's comment to section 583.340(b) states that "[s]ubdivision (b) codifies existing case law. See, e.g., Marcus v. Superior Court [(1977)] 75 Cal.App.3d 204, [212–213] [141 Cal.Rptr. 890] . . . ." (Cal. Law Revision Com. com., 16 West's Ann. Code Civ. Proc. (2011 supp.) foll. § 583.340, p. 238.) *Marcus* involved a stay of all judicial proceedings pending the outcome of an arbitration proceeding. (See §§ 1281.2, 1281.4; *Marcus, supra*, 75 Cal.App.3d at pp. 207–208.) *Marcus* concluded that granting such a stay would not subject the petitioner to the risk of mandatory dismissal for failure to prosecute within five years because the time of the stay would be excluded from the five-year period. (*Marcus, supra*, 75 Cal.App.3d at pp. 212–213.) The court premised its determination that "[w]hile the stay order is in effect, it will be impossible or impracticable to proceed to trial" (*id.* at p. 213) on its recognition that a stay pending arbitration would constitute a stay " 'as to all issues, as to all causes of action, and as to all parties, until arbitration is concluded . . . .' " (*Id.* at p. 209, quoting *Cook v. Superior Court* (1966) 240 Cal.App.2d 880, 885 [50 Cal.Rptr. 81].) Although *Marcus* did not consider the effect of a partial stay, the fact that the Law Revision Commission cited only that case to support its statement that subdivision (b) codified existing case law suggests that the subdivision applies only to complete stays.

Plaintiff argues that the general policy in favor of trial on the merits (§ 583.130) supports a broad interpretation of section 583.340(b). But our interpretation of subdivision (b) is consistent with this policy. This is because subdivision (b) is not the only exclusion from the five-year time period. When it enacted subdivision (b) of section 583.340, the Legislature also enacted the more flexible subdivision (c) of the provision, which permits trial on the merits when appropriate in situations not governed by subdivision (b).

Plaintiff also cites California Rules of Court, rule 3.515[4] (former rule 1514), in support of her position. But that rule does not govern this situation. Rule 3.515(j) provides that "[t]he time during which any stay of proceedings is in effect *under the rules in this chapter* must not be included in determining whether the action stayed should be dismissed for lack of prosecution under chapter 1.5 (§ 583.110 et seq.) of title 8 of part 2 of the Code of Civil Procedure." (Italics added.) Rule 3.515(j) is part of chapter 7 of title 3 of the California Rules of Court. Title 3 contains the civil rules, and chapter 7 of title 3 deals specifically with the coordination of complex actions. Rule 3.515 concerns motions for "an order under Code of Civil Procedure section 404.5[5] staying the proceedings in any action being considered for, or

---

[4] All further references to rules are to the California Rules of Court.

[5] Section 404.5 provides: "Pending any determination of whether coordination is appropriate, the judge making that determination may stay any action being considered for, or affecting an action being considered for, coordination."

affecting an action being considered for, coordination. . . ." (Rule 3.515(a).) When a party moves for such a stay, the motion "may be included with a petition for coordination or may be served and submitted to the Chair of the Judicial Council and the coordination motion judge by any party at any time prior to the determination of the petition." (*Ibid.*) Here, the trial court below excluded from the five-year period one particular time segment, during which a complete stay relating to a petition for coordination was in effect. Defendants do not dispute the propriety of that ruling, and we conclude rule 3.515 does not otherwise apply to this case.

Plaintiff contends it would be "anomalous" for partial stays of prosecution imposed under rule 3.515 to be excluded from the five-year computation under section 583.340(b) while other partial stays would not. Rule 3.515, however, applies narrowly to a specific motion for a stay pending a coordination motion in complex proceedings. It applies only with regard to the rules in chapter 7 of title 3 of California Rules of Court. We find it neither significant nor anomalous that rule 3.515 allows a different outcome than does our general construction of section 583.340(b). Accordingly, the language in rule 3.515(j), which applies only to the effect of a stay order made pursuant to rule 3.515(a), does not govern our construction of section 583.340.

■ We conclude subdivision (b) of section 583.340 governs only complete stays that are "used to stop the prosecution of the action altogether." (Black's Law Dict., *supra*, at p. 1267, col. 1.) The Court of Appeal erred in concluding otherwise.

## B. *Code of Civil Procedure section 583.340(c)*

■ Time periods during which a partial stay of proceedings was in effect are not automatically excluded from the five-year limit under section 583.340(b). This does not resolve whether partial stays are excluded from the five-year limit. It means that partial stays are governed, if at all, by subdivision (c). That subdivision excludes from the five-year time any periods when, for any *other* reason, it was "impossible, impracticable, or futile" to bring the case to trial. (§ 583.340(c).) Plaintiff also relies on this provision in arguing the trial court should not have dismissed the action.

■ Under 583.340(c), the trial court must determine what is impossible, impracticable, or futile "in light of all the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves. [Citations.] The critical factor in applying these exceptions to a given factual situation is whether the plaintiff exercised reasonable diligence in prosecuting his or her case." (*Moran v. Superior Court*

(1983) 35 Cal.3d 229, 238 [197 Cal.Rptr. 546, 673 P.2d 216]; see also *Tamburina v. Combined Ins. Co. of America* (2007) 147 Cal.App.4th 323, 326 [54 Cal.Rptr.3d 175] [trial court must determine whether plaintiff has shown a circumstance of impossibility, impracticability, or futility, a causal connection to the failure to move the case to trial, and that he or she was "reasonably diligent in prosecuting the case at all stages of the proceedings"].) A plaintiff's reasonable diligence alone does not preclude involuntary dismissal; it is simply one factor for assessing the existing exceptions of impossibility, impracticability, or futility. (*Baccus v. Superior Court* (1989) 207 Cal.App.3d 1526, 1532–1533 [255 Cal.Rptr. 781].) " '[E]very period of time during which the plaintiff does not have it within his power to bring the case to trial is not to be excluded in making the computation.' [Citation.]" (*Sierra Nevada Memorial-Miners Hospital, Inc. v. Superior Court* (1990) 217 Cal.App.3d 464, 472 [266 Cal.Rptr. 50].) "Time consumed by the delay caused by ordinary incidents of proceedings, like disposition of demurrer, amendment of pleadings, and the normal time of waiting for a place on the court's calendar are not within the contemplation of these exceptions." (*Baccus*, at p. 1532.) Determining whether the subdivision (c) exception applies requires a fact-sensitive inquiry and depends "on the obstacles faced by the plaintiff in prosecuting the action and the plaintiff's exercise of reasonable diligence in overcoming those obstacles." (*Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 438 [41 Cal.Rptr.2d 362, 895 P.2d 469].) " '[I]mpracticability and futility' involve a determination of ' "*excessive* and *unreasonable* difficulty or expense," ' in light of all the circumstances of the particular case." (*Brunzell Constr. Co. v. Wagner* (1970) 2 Cal.3d 545, 554 [86 Cal.Rptr. 297, 468 P.2d 553].)

The question of impossibility, impracticability, or futility is best resolved by the trial court, which "is in the most advantageous position to evaluate these diverse factual matters in the first instance." (*Brunzell Constr. Co. v. Wagner, supra*, 2 Cal.3d at p. 555.) The plaintiff bears the burden of proving that the circumstances warrant application of the section 583.340(c) exception. (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 590 [86 Cal.Rptr.3d 784].) " 'The "reasonable diligence" standard is an appropriate guideline for evaluating whether it was impossible, impracticable, or futile for the plaintiff to comply with [the statutory five-year constraint] *due to causes beyond his or her control.*' " (*Wilshire Bundy Corp. v. Auerbach* (1991) 228 Cal.App.3d 1280, 1287–1288 [279 Cal.Rptr. 488].) The trial court has discretion to determine whether that exception applies, and its decision will be upheld unless the plaintiff has proved that the trial court abused its discretion. (*Perez*, at pp. 590–591; see also *Lauriton v. Carnation Co.* (1989) 215 Cal.App.3d 161, 164 [263 Cal.Rptr. 476].) Although " ' " 'part of the five-year period must necessarily be consumed in service of process, disposition of demurrers,

amendment of the pleadings, if necessary, usual and reasonable time consumed in waiting for a place on the court's calendar or in securing the attendance of a jury and suchlike usual and necessary proceedings; . . . the section does not contemplate that time consumed in such ordinary proceedings are to be excluded from a computation of the five-year period.' " ' " (*Sierra Nevada Memorial-Miners Hospital, Inc. v. Superior Court, supra,* 217 Cal.App.3d 464, 472; see *J.C. Penney Co. v. Superior Court* (1959) 52 Cal.2d 666, 670 [343 P.2d 919].)

■ The Court of Appeal did not consider whether subdivision (c) of section 583.340 applied to those time periods in which a partial stay was in effect because it found those time periods came within subdivision (b). We will remand the matter to the Court of Appeal to consider whether the trial court abused its discretion in not excluding any or all of the time periods under subdivision (c), including those periods the Court of Appeal had addressed previously, and whether any such exclusions would make the total elapsed time less than five years.

## III.  DISPOSITION

The judgment of the Court of Appeal is reversed and the matter is remanded to the Court of Appeal for further proceedings consistent with this opinion.

Cantil-Sakauye, C. J., Kennard, J., Baxter, J., Werdegar, J., Moreno, J., and Corrigan, J., concurred.